UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RACHEL SLINGER,  *Plaintiff*, | ) ) ) | |
| *vs.* | ) ) | 1:11-cv-01482-JMS-MJD |
| FEDERAL EXPRESS CORPORATION,  *Defendant.* | ) ) ) | |

### ORDER

Presently pending before the Court is Defendant Federal Express Corporation's ("FedEx") Motion for Summary Judgment. [Dkt. 40.] Plaintiff Rachel Slinger filed this suit under Indiana State law, alleging that FedEx terminated her "because she refused to deliver a package she believed to contain marijuana without notifying law enforcement," and that this action constituted a retaliatory discharge under Indiana common law. [Dkt. 1-2 at 3, ¶ 30.] For the reasons that follow, the Court grants FedEx's Motion for Summary Judgment.

### I.
#### STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial...against the moving party." *Celotex Corp. v. Catrett,* 477 U.S. 317, 330

n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture."  *Singer v. Raemisch,* 593 F.3d 529, 533 (7th Cir. 2010).  The non-moving party must set forth specific facts showing that there is a material issue for trial.  Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.  The key inquiry is the existence of evidence to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact.  *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir.1999).

## II.
### UNDISPUTED MATERIAL FACTS

Notwithstanding the few exceptions addressed below, Ms. Slinger agrees with FedEx's Statement of Material Facts.  [*See* Dkt. 45 at 1 ("There are not a lot of disputed facts").]  Thus, the Court will rely on FedEx's recitation in setting forth the relevant facts of this case.

Ms. Slinger began working for FedEx in 1992 as a package handler at FedEx's hub facility in Indianapolis, Indiana.  [Dkt. 42-1 at 22-23.]  Upon their employment, all FedEx employees receive a copy of FedEx's *Your Safety Handbook* ("the Handbook"), [dkt. 42-8 at 2], and Ms. Slinger received copies of the Handbook in 1992, 1994, 1996, 2002, and on May 4, 2007, [dkt. 42-1 at 23].  The copy of the Handbook Ms. Slinger received in May 2007 plainly explains that

employees are to notify their managers immediately upon encountering a suspicious package.[1] [Dkt. 42-8 at 3, 8.] Ms. Slinger received training regarding FedEx's On-Road Policies and Procedures, which directs FedEx employees to "[r]eport actual or suspected theft or other illegal activities to their manager immediately," and instructs that FedEx employees are not permitted to open packages suspected of containing illegal substances without the permission of FedEx's Corporate Security Department. [Dkts. 42-1 at 105-07, 121-22; 42-4 at 1-17.] In February 2010, Ms. Slinger underwent training regarding FedEx's Code of Business Conduct and Ethics, which explained how to report known or suspected unethical or illegal circumstances that might arise at FedEx. [Dkts. 42-1 at 108-12; 42-3 at 1-19.] Ms. Slinger had, in the past, reported suspicious packages to her supervisor at FedEx. [Dkt. 42-8 at 3.]

After holding several positions at FedEx, Ms. Slinger assumed the role of part-time FedEx Customer Service Agent in July 2004. [Dkt. 42-1 at 41-42.] As a Customer Service Agent, Ms. Slinger performed duties such as "accepting packages over the counter from customers and processing them, addressing customer concerns and misdirected packages, moving packages to and from the front counter and the warehouse, distributing equipment and supplies to couriers, and researching problems with packages by telephone or on the computer." [Dkt. 42-8 at 2.]

---

[1] Ms. Slinger argues that paragraph 3 of FedEx's Statement of Material Facts, [dkt. 41 at 2], is inadmissible hearsay. [Dkt. 45 at 2.] The disputed fact of paragraph 3 is that Ms. Slinger received the Handbook, which instructs employees to notify their managers or station dispatchers immediately upon encountering a suspicious package. [Dkt. 41 at 2.] Ms. Slinger asserts that her direct supervisor at the time simply stated what the Handbook said, but failed to produce a corresponding supporting portion of the Handbook. [Dkt. 45 at 2.] Ms. Slinger further argues that she is unable to find "any written rule directing her in the event that she handles a package she believes to contain illegal substances." [*Id.*] A page from the Handbook that specifically instructs FedEx employees to notify their managers immediately upon encountering suspicious packages is, indeed, part of the record, [*see* Dkt. 42-8 at 8], and is admissible as a record regularly kept in the course of business. Accordingly, Ms. Slinger's objection fails.

Ms. Slinger stated during her deposition that in approximately 2007, police officers "recruited [her] . . . to be a confidential informant," and to contact them in the event that she encountered a package that she believed to contain illegal substances. [Dkt. 42-1 at 73-74.] Ms. Slinger stated the police agreed to pay her $100.00 each time she reported a suspicious package. [*Id.* at 77.] Ms. Slinger admitted that the police never instructed her that, in addition to contacting them, she could not contact her manager or FedEx Corporate Security regarding suspicious packages. [*Id.* at 76-77.] On several occasions, Ms. Slinger informed both her FedEx manager and the police about suspicious packages. [*Id.* at 124-25, 198-201; dkt. 42-8 at 3.] No one at FedEx told Ms. Slinger that she could not call the police in addition to notifying her manager or FedEx Security about suspicious packages. [Dkt. 42-1 at 122-23.]

On or about May 7, 2010, FedEx courier Chris Amos attempted to deliver three boxes to a United Parcel Service ("UPS") store. [Dkt. 42-6 at 2, 7.] According to Mr. Amos, the UPS employee working the counter refused the packages, stating "the last time I signed for [this recipient], the feds showed up." [*Id.* at 7.] Mr. Amos coded the packages as refused. [*Id.*] Ms. Slinger then contacted Mr. Amos and told him to open the packages and describe their contents. [*Id.*] After Mr. Amos did so, Ms. Slinger told him to re-tape the packages and return them to her. [*Id.*] Ms. Slinger instructed Mr. Amos to open these packages because she was concerned they contained illegal substances or "could be something involving terrorist activity." [Dkt. 42-1 at 84-85.] At all relevant times, Ms. Slinger knew FedEx policy required a manager or Corporate Security to be present whenever a FedEx employee opened a customer package. [*Id.* at 85, 106-07, 190-91.] Mr. Amos described the contents of the packages to Ms. Slinger, at which point she concluded they contained an illegal substance. [Dkt. 42-6 at 10.] Ms. Slinger proceeded to call the police and notify them about the packages. [*Id.*] By the time Mr. Amos returned the packag-

es to FedEx, Ms. Slinger's shift had ended and she had left for the day. [Dkt. 42-1 at 95-96.] Ms. Slinger did not tell her manager or FedEx Corporate Security that she had contacted the police, or that she had encountered suspicious packages. [*Id.* at 123.]

Shortly after this incident, Mr. Amos reported to his FedEx manager that Ms. Slinger had instructed him to open the packages on his truck. [Dkt. 42-6 at 9.] Ms. Slinger had asked Mr. Amos not to tell management that she had instructed him to open the packages. [*Id.* at 7, 9.] On May 12, 2010, Ms. Slinger was placed on paid suspension so that her handling of the packages could be investigated. [*Id.* at 11.]

On May 24, 2010, FedEx disciplined Ms. Slinger with a warning letter for violating its Acceptable Conduct Policy and its Station and On-Road Security Policy. [*See* Dkt. 42-7 at 11.] FedEx again explained to Ms. Slinger that she should contact FedEx management or security upon encountering a suspicious package. [Dkts. 42-1 at 118; 42-7 at 3.] Through the investigation and disciplinary process, it was explained to Ms. Slinger that a FedEx employee should not take money from the police for reporting packages, and that she should inform her manager or FedEx security if she encountered a package which she suspected contained illegal substances. [Dkts. 42-1 at 114; 42-6 at 2-3.]

Subsequently, after receiving a written notice that her attendance and punctuality were approaching unacceptable levels, [dkts. 42-1 at 59-60; 42-2 at 56], and after three subsequent tardy arrivals, FedEx disciplined Ms. Slinger with a Performance Reminder and Decision Day – which constituted Ms. Slinger's second notice of deficiency. [Dkts. 42-1 at 132-37; 42-4 at 33-38.]

On November 8, 2010, FedEx Service Agent Veronica Krumb informed FedEx that Ms. Slinger had called the police about a package she suspected of containing illegal drugs. [Dkt. 42-

6 at 13-15.] Ms. Slinger had told Ms. Krumb that she called the police about the suspicious package because it paid good money. [Dkt. 42-8 at 9-10.] Ms. Slinger did not notify her managers or FedEx security about this package. [Dkt. 42-6 at 20.]

To investigate Ms. Krumb's report that Ms. Slinger had mishandled another suspicious package, on November 16, 2010 FedEx placed a decoy package intended to raise suspicion into its system. [*Id.* at 4.] When the package arrived at the FedEx station in Indianapolis on November 17, 2010, Ms. Slinger and another Service Agent processed it as a problem package. [*Id.* at 5.] Ms. Slinger called the police regarding this package, and failed to report it to her manager or to FedEx Security. [*Id*. at 20.] Additionally, during a December 2, 2010 interview with FedEx security, Ms. Slinger admitted that in November 2010 she had reported two suspicious packages to police without notifying FedEx management or security. [*Id.* at 20.]

FedEx disciplined Ms. Slinger with a third Warning Letter on December 3, 2010, for failing to notify FedEx management or security regarding the decoy packages she handled the month before. [*See* Dkts. 42-1 at 170-71; 42-5 at 9-10.] It is FedEx policy, barring certain exceptions, to terminate employees who receive three notices of deficiency within a twelve-month period. [*See* Dkt. 42-8 at 17 ("The receipt of three notifications within a 12-month period normally results in termination").] Ms. Slinger understood that it was FedEx policy to terminate employees who receive three notices of deficiency within a twelve-month period. [Dkt. 42-1 at 171-72.] Rebecca Sorrell, a Manager in FedEx's Customer Experience Network and Ms. Slinger's direct supervisor during her final six months of employment at FedEx, has never made an exception to this policy during her employment at FedEx which began in 1994. [Dkt. 42-8 at 1-2, 5.]

As the December 3, 2010 Warning Letter was the third disciplinary letter Ms. Slinger received within a twelve-month period, she was terminated.[2] [*See* Dkt. 42-8 at 17.] FedEx told Ms. Slinger she was being terminated for having received three disciplinary letters within a twelve-month period. [Dkt. 42-1 at 174.] Ms. Slinger was never told by anyone at FedEx that she would be fired for refusing to work on or deliver a package. [*Id.* at 191.]

Ms. Slinger contested her termination under FedEx's Guaranteed Fair Treatment procedure, but three levels of upper management upheld her termination. [*See* Dkts. 42-4 at 27-31; 42-5 at 9-23.] Ms. Slinger filed this action on October 14, 2011.[3]

### III.
#### DISCUSSION

Ms. Slinger contends FedEx terminated her for her refusal to deliver a package that contained an illegal substance without notifying police. [Dkt. 1-2 at 3.] Ms. Slinger asserts that her termination constituted a retaliatory discharge under Indiana common law. [*Id.*] While she does not dispute that her employment with FedEx was at-will, Ms. Slinger argues her discharge was prohibited by an exception to the at-will doctrine that seeks to prevent the termination of an employee for refusal to commit an illegal act for which that employee would be personally liable.

---

[2] Ms. Slinger contends that she was fired for notifying the police "whenever she handled a suspicious package." [Dkt. 45 at 2.] She disputes the fact that she was fired for receiving three disciplinary letters within a twelve-month period. Consequently, she asks the Court to include in its Statement of Facts that "[s]omeone could reasonably infer that the reason Ms. Slinger was fired was because she called [the police] about suspicious packages." [*Id.*] The reason for Ms. Slinger's termination is the essence of this dispute. That a reasonable person could make an inference is not a fact, and the Court declines to include this point in its Statement of Facts. The Court's "favor toward the non-moving party does not extend to drawing 'inferences that are supported by only speculation or conjecture.'" *Singer v. Raemisch,* 593 F.3d 529, 533 (7th Cir. 2010).

[3] Ms. Slinger requests that the Court add to its recitation of the facts that "FedEx is a drug-free workplace, and forbids the possession or use of illegal drugs on company premises." [Dkt. 45 at 3.] The Court does not recognize this fact as relevant. To the extent Ms. Slinger is attempting to argue that she was merely upholding this drug-free policy, that argument would fail because Ms. Slinger never opened any of the packages she suspected of containing illegal drugs. [Dkt. 42-1 at 107.]

[Dkt. 45 at 4 (citing *McClanahan v. Remington Freight Lines*, 517 N.E.2d 390, 393 (Ind. 1988)).] FedEx argues that Ms. Slinger was terminated because she "received three letters of deficiency in less than seven months, and it was FedEx's policy to typically fire employees who receive three letters within a twelve-month period." [Dkt. 41 at 15-16.] FedEx further asserts that Ms. Slinger cannot establish a prima facie case of retaliatory discharge because: (1) she cannot show that she refused to act illegally; and (2) she cannot show "a causal link between the alleged protected activity and the alleged retaliatory termination." [*Id.* at 14-17.] Lastly, FedEx argues that even if Ms. Slinger established a prima facie case for retaliatory discharge, she "cannot show that FedEx's legitimate, non-retaliatory reason for firing her was false or a pretext." [*Id.* at 17.]

    **A.**    **At-Will Employment**

"Historically, Indiana has recognized two basic forms of employment: (1) employment for a definite or ascertainable term; and (2) employment at-will." *Orr v. Westminster Village North*, 689 N.E.2d 712, 717 (Ind. 1997). Ms. Slinger does not dispute that her employment at FedEx was at-will. The at-will doctrine allows employers and employees to terminate employment relationships at any time for "a good reason, bad reason, or no reason at all." *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind. 2007) (quoting *Montgomery v. Bd. of Trustees of Purdue Univ.,* 849 N.E.2d 1120, 1128 (Ind. 2006) (citations omitted)).

"On rare occasions," Indiana Courts have recognized "narrow exceptions" to the at-will doctrine. *Meyers*, 861 N.E.2d at 706. One such exception establishes that an employer cannot terminate an employee for "refusing to commit an illegal act for which [the employee] would be personally liable…." *McClanahan*, 517 N.E.2d at 393. Ms. Slinger claims she was fired for refusing to commit an act that would subject her to personal liability – specifically, the delivery of

illegal substances – and therefore her termination constituted a retaliatory discharge. [Dkt. 1-2 at 3, ¶¶ 28-30.]

### B. Retaliatory Discharge

Both the Seventh Circuit Court of Appeals and Indiana courts have held that common law retaliatory discharge claims and Title VII retaliatory discharge claims are analogous and, for both, a plaintiff must show: "(1) that . . . she opposed an unlawful employment practice; (2) that she was the object of adverse employment action; and (3) that the adverse employment action was caused by her opposition." *Hamann v. Gates Chevrolet, Inc.*, 910 F.2d 1417, 1420 (7th Cir. 1990) (citations omitted). To succeed on a retaliatory discharge claim under the *McClanahan* exception – for refusal to commit an illegal act for which a plaintiff would have been personal liable – the plaintiff must show that she refused to act illegally, that she was discharged, and that she was discharged for her refusal to act illegally. *Hamann*, 910 F.2d at 1420; *McClanahan*, 517 N.E.2d at 393.

#### 1. *Refusal To Act Illegally*

Ms. Slinger contends that she refused to deliver packages that contained illegal substances without first notifying law enforcement. [Dkt. 1-2 at 3, ¶ 30.] She contends that had she not notified the police, and instead processed or delivered suspicious packages, she would have been personally liable. [*Id.* at 3, ¶¶ 28-29.] FedEx asserts that Ms. Slinger never refused to deliver any suspicious packages. [Dkt. 41 at 14.] It argues that because Ms. Slinger never informed her supervisors at FedEx about the suspicious packages she handled in May and November 2010, she could not have been instructed to commit the allegedly illegal acts of delivering them, and thus could not have refused to do so. [*Id.* at 15.]

In *McClanahan*, the plaintiff trucker was carrying freight he knew to be heavier than the weight limit permitted in Illinois. *See McClanahan*, 517 N.E.2d at 391. Plaintiff informed the defendant employer that it would be illegal for him to drive the freight through Illinois. *Id.* Despite that knowledge, defendant instructed plaintiff to drive through Illinois with the overweight freight. *Id.* The facts of *McClanahan* are distinguishable from those of the instant case in very material ways. First, Ms. Slinger never *knew* the contents of the packages she considered suspicious because she never opened them, [dkt. 42-1 at 107], while the employee in *McClanahan* knew his freight exceeded the lawful weight limit. Second, Ms. Slinger failed to report her suspicions to her superiors at FedEx, [dkt. 42-7 at 9, 14], while the employee in *McClanahan* told his employer the freight was too heavy. Third, FedEx never instructed Ms. Slinger to deliver the suspicious packages, while the employer in *McClanahan* instructed the driver to continue driving with the overweight freight. In short, unlike in *McClanahan*, Ms. Slinger's superiors at FedEx had no knowledge that there was potential for unlawful conduct, so could not have instructed Ms. Slinger to commit the allegedly illegal act of delivering the packages.[4]

Because Ms. Slinger has failed to establish that she opposed an unlawful employment practice – or that she was instructed to commit an illegal act and failed to do so – her retaliatory discharge claim fails. Nonetheless, the Court will briefly address the remaining retaliatory discharge factors.

---

[4] Ms. Slinger contends that had she delivered or processed the allegedly suspicious packages, she would have been liable under several federal and Indiana state statutes that define marijuana as an illegal substance, and prohibit its distribution or possession. [*See* Dkt. 1-2 at 2-3.] The Court does not find it necessary to address Ms. Slinger's liability under these statutes. Ms. Slinger never knew the contents of these packages because, she acknowledges, she never opened them. [Dkt. 42-1 at 107.] Further, she did not inform FedEx about her suspicions.

### 2. *Adverse Employment Action*

The second factor for a retaliatory discharge claim, that Ms. Slinger suffered an adverse employment action, is not at issue. It is undisputed that Ms. Slinger was terminated. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("[W]hen an employee is fired…it is clear that an employee has been the victim of an adverse employment action").

### 3. *Discharge Caused by Opposition to Unlawful Employment Practice*

As discussed above, Ms. Slinger has failed to establish that FedEx terminated her for her refusal to commit an act that would subject her to personal liability. "[T]o make out a claim for retaliatory discharge, a plaintiff must allege and prove more than that she was fired; she must allege and prove that her firing *was caused* by a prohibited retaliatory motive….Without the requisite causation there might be a discharge, but not an actionable discharge." *Hamann*, 910 F.2d at 1420 (emphasis in original) (citing *McClanahan*, 517 N.E.2d at 393). Indiana common law retaliatory discharge claims require the same causal connection. *Hamann*, 910 F.2d at 1420.

 FedEx contends that Ms. Slinger was terminated because she received three disciplinary letters within a span of seven months, and that it is FedEx's policy to terminate an employee who receives three such disciplinary actions within a twelve-month span. This policy is set forth in FedEx manuals. [Dkt. 42-8 at 17.]

Ms. Slinger argues it should be left to the jury to determine the reason FedEx terminated her, but offers no evidence to show FedEx fired her for any reason other than receiving three disciplinary letters within a twelve-month span. [Dkt. 45 at 5-6.] While Ms. Slinger baldly asserts that FedEx terminated her for her refusal to deliver packages containing illegal substances, she only offers one discernible argument supporting this inference – that FedEx's action of sending a decoy package through its system would allow a jury to reasonably conclude that FedEx was

"looking for a reason to fire her." [Dkts. 1-2 at 3, ¶ 30; 45 at 5-6.] This argument ignores the fact that FedEx deployed the decoy package after Ms. Krumb reported that Ms. Slinger called the police about a suspicious package on November 4, 2010 without notifying management or FedEx security. [Dkt. 42-6 at 4, 13-15.] Further, Ms. Slinger was not terminated strictly for mishandling the decoy package; for that, she was issued a warning letter. [Dkt. 42-8 at 5, 12.] Because this was Ms. Slinger's third warning letter within a twelve-month span, she was then terminated in accordance with FedEx policy. [*Id.* at 6, 17.] The Court also notes that only two of Ms. Slinger's warning letters were issued as a result of her mishandling of suspicious packages. The second warning letter she received was the result of unacceptable punctuality and attendance. [*See* Dkt. 42-2 at 56.]

In contesting a motion for summary judgment, the non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Ms. Slinger has failed to set forth specific facts establishing that she was discharged for her refusal to perform an unlawful act.

### 4. *FedEx's Non-Retaliatory Reason for Discharge*

Even if a plaintiff establishes a prima facie retaliatory discharge claim, the defendant can avoid liability by articulating "a legitimate, nondiscriminatory reason for discharge" as long as the plaintiff cannot prove by a preponderance of evidence that the non-retaliatory reason offered by the employer is a pretext. *See Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002) (citing *Fuller v. Allison Gas Turbine Div.,* 670 N.E.2d 64, 68 (Ind.Ct.App.1996)). "[A] plaintiff may survive a motion for summary judgment if the defendant proffers a reason for the plaintiff's firing that is patently inconsistent with the evidence before the court." *Hamann*,

910 F.2d at 1421 (citing *Pepkowski v. Life of Indiana Ins. Co.,* 535 N.E.2d 1164, 1168 (Ind. 1989)).

FedEx's proffered reasons for discharging Ms. Slinger are by no means "patently inconsistent" with the evidence presented. *Hamann*, 910 F.2d at 1421. Indeed, Ms. Slinger does not dispute that she was reprimanded for poor punctuality, that she ordered Mr. Amos to open packages knowing she should not do so without a supervisor's permission, that she failed to report suspicious packages to her supervisors, and that she received three notices of deficiency within a twelve-month span. Ms. Slinger cannot show that FedEx's proffered reasons for her termination were pretext.

## IV.
### CONCLUSION

Ms. Slinger received three notices of deficiency in a twelve-month period resulting in her termination, consistent with FedEx policy. Her attempt to recast her termination so as to fit it within the parameters of an Indiana retaliatory discharge case is unsupported by evidence, and therefore unsuccessful. Because Ms. Slinger cannot establish a prima facie case for retaliatory discharge, the Court hereby **GRANTS** FedEx's Motion for Summary Judgment, [dkt. 40]. Judgment will enter accordingly.

03/11/2013

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

- 14 -

**<u>Distribution via ECF only</u>:**

Karen Vaughan McManus
FEDERAL EXPRESS CORPORATION
kvmcmanus@fedex.com

Pamela A. Paige
PLUNKETT COONEY
ppaige@plunkettcooney.com

Christopher Kenneth Starkey
starkeyck@msn.com